THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DONETT HOLMES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    CIV-19-746-R |
| | ) |
| **STATE FARM MUTUAL** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## ORER

Before the Court is the Motion for Summary Judgment (Doc. No. 24) filed by Defendant, State Farm Mutual Insurance Company. Plaintiff, Donett Holmes, responded in opposition to the motion[1] (Doc. No. 25). Defendant filed a Reply in support of its position, Plaintiff was granted leave to file a sur-reply and Defendant a response to that sur-reply (Doc. Nos. 27, 30, 33). Upon consideration of the parties' submissions, the Court finds as follows.

Plaintiff Donett Holmes was involved in a vehicle accident on August 18, 2016 while driving on Interstate 44 in Oklahoma City; the accident was caused by an unknown driver. At the time of the accident Plaintiff was insured under a policy issued by Defendant State Farm which included uninsured/underinsured ("UM") coverage in addition to Medical Payments ("Med Pay") Coverage. Pursuant to the UM provision of the policy

---

[1] Plaintiff failed to provide the Court with a paper copy of her 41-page response to the motion as required by Section (II)(A)(5) of the ECF Policies and Procedures Manual.

Defendant agreed to "pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle." Doc. No. 24-4.

Plaintiff submitted a claim to State Farm following the accident. On August 24, 2016, Plaintiff informed State Farm that she intended to seek treatment for injuries allegedly sustained in the accident.[2] Ms. Holmes presented herself for treatment at Essential Integrative Health on August 30, 2016, complaining of back and neck pain. Medical records from the visit indicate a 2010 accident and a neck surgery that same year. She was assessed as having lumbar spondylosis and spondylosis of the cervical region without myelopathy or radiculopathy and cervical pain. Treatment included refilling a prescription for morphine sulfate and ordering x-rays of her spine.[3]

Plaintiff returned to Essential Integrative Health on September 7, 2016.[4] Plaintiff was assessed as having myalgia, lumbar spondylosis, and other cervical disc displacement. "Her clinical symptoms appear indicative of acute exacerbation of chronic complaint, likely of myofascial and soft tissue nature." (Doc. No. 24-11). She was treated with natural trigger point therapy injections, consistent with prior treatment she had received.

According to the State Farm claims file, on October 10, 2016, Plaintiff advised State Farm that she was still seeking treatment and would request her treating physician to submit

---

[2] Plaintiff was involved in a number of motor vehicle accidents around this same time, specifically on May 22, 2015, October 30, 2015, and May 7, 2016.

[3] Plaintiff had been prescribed morphine sulphate in May 2016 by Essential Integrative Health. Notes from the August 30, 2016 visit also include Plaintiff's statement that "she has had cervical prolotherapy in the past like to repeat that." (Doc. No. 24-9, p. 3).

[4] The first page of this medical record was not presented to the Court and as a result the Court cannot clearly discern the basis for the visit, although it is apparent that Plaintiff and the treatment provider discussed her x-rays.

her medical bills once treatment was completed. On December 23, 2016, State Farm sent Plaintiff a letter related to Med Pay Coverage, requesting additional bills from Plaintiff and informing her that if no additional bills were received, State Farm would consider the matter closed. Plaintiff responded via telephone, informing the State Farm representative that she was continuing treatment and therefore wished to keep the Med Pay claim open. Plaintiff was to call her doctor about submitting bills. On January 31, 2017, Plaintiff called State Farm and was informed that State Farm had not received any medical bills or the Med Pay kit it had sent her.[5] She indicated she would return the kit and asked to speak with someone regarding UM. In her conversation with a UM claims representative, Plaintiff was informed that State Farm had not found the identity of the owner or driver of the vehicle responsible for the accident. She indicated that she was still taking treatment and it was explained that UM would "kick in" on her bodily injury claim. (Doc. No. 24-15).

Between January and April 2017, Plaintiff communicated with State Farm personnel regarding the submission of medical bills. As of March 31, 2017, State Farm had not received bills. On April 19, 2017, State Farm indicated it had received bills from Oklahoma Spine Surgery and Orthopedics but still had not received any bills from Essential Integrative Health. Plaintiff called back days later indicating that Essential had attempted to fax bills many times unsuccessfully and had therefore mailed the bills to State Farm. On May 30, 2017, Trish Lowery of State Farm left a message for Ms. Holmes to discuss her

---

[5] On that same date Trish Lowery, a claims specialist for State Farm, wrote a letter to Oklahoma Spinal Surgery and Orthopedics indicating that the bills it received were incomplete and that State Farm required additional information including valid diagnosis codes, tax identification numbers and provider billing information.

injuries. On June 1, 2017, Defendant made an offer to Plaintiff on her UM claim of $7,500.[6] The offer was premised on $5,421 in past medical and $2000 in past pain and suffering. Defendant allocated no funds toward future medical or pain and suffering, and the offer was at the low end of Defendant's assessment of the value of the case—which was between $7,421 and $9,421, the differential premised on past pain and suffering of $4,000 versus $2,000. When Trish Lowery made Plaintiff the verbal offer, Ms. Holmes apparently asked about future treatment. According to the claims file notes, Lowery "[e]xplained due to DDD [(diagnosed degenerative disc disease)], unable to differentiate between chronic deg issues and aggravation from accident. Asked her to contact me after she has thought about the offer and s/w MPC." (Doc. No. 24-23).

State Farm contacted Plaintiff on July 6, 2017 and left a voicemail about its settlement offer. Plaintiff contacted State Farm with James Conrady, an attorney, on July 10, 2017, and authorized State Farm to handle directly with Mr. Conrady. Although State Farm requested a letter of representation from Mr. Conrady on multiple occasions, he did not submit one to State Farm until July 13, 2018.[7]

In a letter dated October 18, 2017, State Farm requested that Plaintiff provide it with any outstanding medical bills because the Med Pay file had been inactive for more than thirty days. Plaintiff contacted State Farm on October 27, 2017 and informed the representative that she had started treatment again and wished to keep her UM claim open.

---

[6] Plaintiff did not recall having been offered a settlement for her UM claim.
[7] State Farm states that Plaintiff "gave permission to State Farm to resolve her claim with Mr. Conrady." (Doc. No. 24, p. 9).

4

On December 22, 2017, State Farm issued an $850.00 payment to Community Hospital which exhausted the $5,000 in Med Pay coverage provided by the policy.[8] The claims file for that date includes the following notation:

> Reviewed escalated claim due to a hosp bill. We have paid bills thru January. Hosp bill is dos 10/13/217 and it appears to be an MRI and CT of cervical spine. IV damage over 12k. There is less than $850 left on MPC before it exhausts. Issue payment to Community to exhaust limits.

(Doc. No. 24-29). Thereafter, on February 13 and March 28, 2018, State Farm received medical reports and bills from Plaintiff's chiropractor. On June 4, 2018, the claims file notes indicate "RCF Jane @ MP confirming that MB's were recv'd for final 2 appts on 10/9 and 10/18. Adv that MPC is exhausted but that these 2 MB's will be considered in UM settlement & will notify CH that they were recv'd. Added to IED's." (Doc. No. 24-29).

On July 13, 2018, Plaintiff's counsel finally submitted his letter of representation to State Farm. He indicated he had a number of additional bills and liens for Ms. Holmes. It is not apparent from the portion of Defendant's claim file submitted by the parties whether or when those bills were submitted to State Farm. However, on September 10, 2018, Jane from Essential Integrated contacted State Farm and was advised Med Pay had been exhausted. Defendant provided the Court with no subsequent entries from the claims file. Thereafter, in August 2019, Plaintiff initiated this action in the District Court of Oklahoma County, which Defendant removed to this Court. Plaintiff asserts a claim for bad faith

---

[8] From the claims file notes it appears that the payment was to cover treatment from October 13, 2017. The record indicates a lien was received from the hospital o December 13, totaling $4798.40, and only $850.00 remained in Med Pay coverage which was forwarded to the hospital.

5

against State Farm and seeks both compensatory and punitive damages.[9]

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). In short, the Court must inquire "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52.

At the outset the Court notes that Plaintiff's response to the motion for summary judgment does not comport with Local Civil Rule 56.1(c), which requires that a

---

[9] Plaintiff pled punitive damages as a separate claim, however, under Oklahoma law, punitive damages are an element of recovery, not a separate claim. *Rodebush v. Okla. Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993).

> brief in opposition to a motion for summary judgment (or partial summary judgment) shall begin with a section responding, *by correspondingly numbered paragraph,* to the facts that the movant contends are not in dispute and shall state any fact that is disputed. Separately, the brief in opposition may, in concise, numbered paragraphs, state any additional facts the nonmovant contends preclude judgment as a matter of law.

Plaintiff's response brief numbers all paragraphs and does not contain any corresponding numbered paragraphs related to Defendant's statement of undisputed facts.[10] The Court finds, despite Plaintiff's failure to properly respond, that Defendant has not established as a matter of law that it is entitled to summary judgment on Plaintiff's bad faith claim.[11] Nevertheless, the Court has reviewed all of the evidence provided in an effort to discern whether genuine issues of material fact remain for resolution at trial.[12]

A federal court sitting in diversity applies the substantive law of the forum state. *Napier v. Cinemark USA, Inc.*, 635 F. Supp. 2d 1248, 1250 (N.D. Okla. 2009). Under Oklahoma law, "[a]n insurer has an 'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assurance*

---

[10] Plaintiff's failure to follow Local Rule 56.1 is not the only confusing aspect of her response brief. Counsel includes sections entitled "Material Facts Not in Controversy", "Evidence in Support of Plaintiff's Substantive Allegations of Defendant's Bad Faith to Be Considered Most Favorably to the Plaintiff," "Punitive Damages," and "Material Facts in Controversy to be Determined by the Trier of Fact," followed by the arguments and authorities. This method of briefing is decidedly unhelpful to the Court and opposing counsel.

[11] Plaintiff's petition pled bad faith only with regard to uninsured/underinsured motorist coverage, referenced by Plaintiff as "U" coverage. To the extent Plaintiff references Med Pay coverage, she did not plead any claim premised on Defendant's alleged failure to make payments under Plaintiff's Med Pay coverage. Additionally, Defendant presents evidence that it made payments to Plaintiff's medical provider, Community Hospital, exhausting the $5,000 of Med Pay coverage. Plaintiff presents no contradictory evidence and, accordingly, the Court limits its consideration of Plaintiff's bad faith claim to the issue of UM coverage.

[12] The Court notes that Defendant's filings are not without issue. In its Reply and Response to Plaintiff's Sur-reply Defendant makes factual assertions without citation to any evidence—for example, Defendant alleges that Plaintiff was assessed as disabled in 2013 as a result of chronic issues related to her cervical spine and that she received medical treatment for her neck only 13 days before the accident underlying this suit. No evidence in the record supports either of these representations.

*Co.*, 577 P.2d 899, 901 (Okla. 1977)). "[T]he violation of this duty gives rise to an action in tort ...." *Christian*, 577 P.2d at 904. To succeed on her bad faith claim, Ms. Holmes must present evidence from which "a reasonable jury could conclude that [State Farm] did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (citing *McCoy v. Okla. Farm Bureau Mut. Ins. Co.*, 841 P.2d 568, 572 (Okla. 1992)). This determination is made "in light of all facts known or knowable concerning the claim at the time plaintiff requested the company to perform. *Oulds*, 6 F.3d at 1439 (quotations marks and citation omitted).

The Tenth Circuit has described the analysis of a bad faith claim as a two-step process:

> First, the court considers whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim. If there is no legitimate dispute between the parties, the court may infer that the insurer denied payment in bad faith. *See Barnes v. Okla. Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 171, 175 (Okla. 2000)(finding no legitimate dispute about the amount or extent of coverage and concluding that the insurer denied payment in bad faith). But where there *is* a legitimate dispute between the parties, then, "as a matter of law[,] . . . no reasonable inference of bad faith arises. *Timberlake*, 71 F.2d at 344 (quoting *Oulds*, 6 F.3d at 1442).
> Because "the denial of a claim based upon a legitimate dispute does not imply "bad faith" as a matter of law, "judgment as a matter of law is to be granted to the insurer" unless the insured "produce[s] specific evidence of bad faith." *Oulds*, 6 F.3d at 1442. Thus, if the court determines there is a legitimate dispute between the parties, it proceeds to the second step of its analysis and considers whether the plaintiff offered specific additional evidence to demonstrate bad faith. *See Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128-32 (10th Cir. 2012).

*Shotts v. GEICO General Ins. Co.*, 943 F.3d 1304 (10th Cir. 2019).

The Court finds evidence to support the existence of a legitimate dispute between Plaintiff and State Farm regarding the nature and extent of her injuries and whether the

8

injuries were caused by the August 2016 accident. Accordingly, there is no reasonable inference of bad faith at step one of the process set forth in *Shotts*. At step two, viewing the record in the light most favorable to Plaintiff, the Court concludes that a jury could find that Defendant State Farm acted in bad faith with regard to the valuation of Plaintiff's UM claim. Specifically, the evidence pertaining to Defendant's settlement offer gives rise to differing inferences that preclude the Court from granting summary judgment. Defendant made an offer of settlement on June 1, 2017, of $7,500, presumably premised on medical bills received as of that date. Plaintiff does not indicate that he takes issue with the assessment of $7,500 based on the information then known by State Farm, which obviously did not include bills for treatment not yet undertaken. An issue of fact arises, however, with Defendant's position after that time because the record is devoid of evidence that State Farm reconsidered its $7,500 offer when, in 2018, it received bills for treatment undertaken in October 2017.[13] "The duty of good faith and fair dealing exists during the [entire] time a claim is being reviewed." *See Roesler v. TIG Ins. Co.*, 251 F. App'x 489, 498 (10th Cir. 2007). Accordingly, although Defendant received additional medical bills, it made no assessment of whether to supplement its UM offer premised on these new bills.[14] The failure to do so or to explain why it failed to increase its UM offer directly contradicts the statement in the claims file indicating that State Farm personnel told Jane from Essential

---

[13] State Farm's claims documentation is difficult to construe in that there are no contemporaneous indications regarding medical bills so that the Court can ascertain how Defendant calculated the unpaid medical bills before it offered Plaintiff a $7,500 settlement. However, Plaintiff does not take issue with the initial calculation.

[14] The Court notes that whether the December 2017 payment of the final $850 in Med Pay left an outstanding bill with Community Hospital that Defendant should have considered in assessing Plaintiff's UM claim is not clear from the parties' submissions.

Integrated Health that the October 2017 bills would be part of the UM settlement.[15] The Court finds that genuine issues of material fact remain for resolution at trial on the issue of Plaintiff's bad faith claim, as it relates to the valuation of his UM claim.[16]

In response to the motion Plaintiff complains that Defendant has yet to pay any amounts under the "U" coverage. Defendant asserts that it could not tender payment to Plaintiff because of liens attached by certain medical providers pursuant to Okla. Stat. tit. 42 § 46. Although Plaintiff argues no such liens attached to the UM proceeds, she relies on § 43 of Title 42 which applies to hospitals as opposed to health care practitioners.[17] Additionally, the evidence is undisputed that Plaintiff did not respond to Defendant's offer of settlement prior to filing this lawsuit. The Court finds, as a matter of law, that Plaintiff cannot rely on Defendant's alleged failure to proffer a check for the undisputed $7,500 as a basis for bad faith.

Defendant also seeks summary judgment on Plaintiff's request for punitive

---

[15] The claims file contains the following notes for June 4, 2018:
> RCF Jane @ MP confirming that MB's were recv'd for final 2 appts on 10/9 and 10/18. Ady that MPC is exhausted but that these 2 MB's will be considered in UM settlement and will notify CH that they were recv'd. Added to IED's.

(Doc. No. 24-29). With regard to the post October 18, 2017 bills listed on a page that appears to have been created by Plaintiff's counsel (Doc. No. 25-2), it is unclear whether and when those bills were submitted to Defendant.

[16] Defendant argues that UM pays for bodily injury caused by the accident with the uninsured driver and not "medical bills" per se. However, medical costs necessitated by the accident, that is caused by the accident, would be permissible recovery as financial losses.

[17] The Court also notes that Okla. Stat tit. 42 § 43 was amended in 2012 and now includes the following:
> In addition to the lien provided for in subsection A of this section, every hospital in this state, which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workers' Compensation Code, shall have, if the injured person asserts or maintains a claim against an insurer, a lien for the amount due for the emergency medical or other service upon any monies payable by the insurer to the injured person. Provided, however, the lien shall be inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such patient, his or her heirs or personal representatives; provided, further, that the lien herein set forth shall not be applied or considered valid against any claim for amounts due under the Workers' Compensation Code in this state.

damages, arguing that Ms. Holmes cannot establish that Defendant acted in reckless disregard of its duty of good faith and fair dealing. Pursuant to Oklahoma statute, a jury may award punitive damages where it finds by *clear and convincing evidence* that "[a]n insurer has recklessly disregarded its duty to deal fairly and act in good faith with its insured" or "intentionally and with malice breached its duty to deal fairly and act in good faith with its insured." Okla. Stat. tit. 23, § 9.1(B)(2), (C)(2).[18] Plaintiff's response brief does not sufficiently address Defendant's Motion for Summary Judgment; the five paragraphs under the "Punitive Damages" heading are not limited to addressing the punitive damages standard. She merely argues that Defendant's practices "may be reasonably construed as being willful and intentional."

> Although the current punitive damage statute contains language specifically referencing insurers when they are sued for breach of the duty of good faith and fair dealing, our recognition in *Buzzard* that such an award is not automatic and is governed by the standard applicable in other tort cases still stands and nothing in § 9.1 has altered this principle.

*Badillo*, 121 P.3d at 1106. Accordingly, for a Plaintiff to proceed with a claim for punitive damages there must be evidence, at a minimum, from which a reasonable juror could conclude that

> [Defendant] was either aware, or did not care, that there was a substantial and unnecessary risk that [its] conduct would cause serious injury to others. In order for the conduct to be in reckless disregard of another's rights, it must have been unreasonable under the circumstances, and also there must have been a high probability that the conduct would cause serious harm to another person.

---

[18] There is a third tier of punitive damages, which requires proof that an insurer engaged in conduct life-threatening to humans, which is not implicated by the allegations herein.

11

OUJI-Civ. No. 5.6. Plaintiff has not presented clear and convincing evidence sufficient to meet the minimum threshold for punitive damages, and accordingly, Defendant is entitled to summary judgment thereon.

Defendant John Doe is hereby DISMISSED. The time for amendment has long passed, as has the statute of limitations, and Plaintiff has not made an effort to substitute a named party for Defendant Doe. Accordingly, the Court dismisses him from this suit.

For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. No. 24) is DENIED as to Plaintiff's bad faith claim and GRANTED as to her request for punitive damages. Defendant Doe is hereby DISMISSED.

**IT IS SO ORDERED** this 17th day of November 2020.

_David L. Russell_
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE